UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————

№ 07-CV-1337 (JFB) (ETB)

———————————————

DR. LEVI MCINTYRE,

Plaintiff,

VERSUS

LONGWOOD CENTRAL SCHOOL DISTRICT, DR. ALLAN GERSTENLAUR, MIDDLE ISLAND ADMINISTRATORS ASSOCIATION, AND KATHLEEN BRENNAN,

Defendants.

———————————————

MEMORANDUM AND ORDER
March 27, 2008

———————————————

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Dr. Levi McIntyre ("McIntyre" or "plaintiff") brings this action against defendants Longwood Central School District ("LCSD"), Dr. Allan Gerstenlauer ("Gerstenlauer"), Middle Island Administrators Association ("MIAA") and Kathleen Brennan ("Brennan"), alleging violations of his rights under federal and New York State law. Specifically, McIntyre asserts the following claims against defendants MIAA and Brennan: (1) discrimination based on race and gender in violation of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; (2) discrimination based on his age in violation of the Federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq*. (the "ADEA")  (3) violations of his civil rights pursuant to, 42 U.S.C. §§ 1981 and 1983, based upon unlawful discrimination; (4) breach of the duty of fair representation as provided under N.Y. Civil Service Law 209(a)(1); and (5) violation of Section 296(1)(a) of the New York State Human Rights Law ("NYSHRL"). Specifically, plaintiff, who is 59-year old Black male and has been the Principal at LCSD for fourteen years, contends that he has been denied the same equal base salary increases as other similarly situated administrators in the LCSD and MIAA because of his race, gender, and age.

Defendants MIAA and Brennan (collectively, "defendants") move to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, defendants' motion is granted in part and denied in part.

———

[1] Defendants LCSD and Gerstenlauer are not submitting a motion to dismiss and are in the discovery phase.

## I. BACKGROUND

### A. The Facts

The facts are drawn from the complaint and taken as true for the purposes of this motion.

#### 1. McIntyre's Hiring

McIntyre is a fifty-nine year old, Black male who resides in New York. (Compl. ¶ 3, 10.) He holds a B.S. with Distinction and an M.S from Indiana University, Bloomington, an ED.D. from the University of South Florida, and a Post Doctoral Certificate in Labor Management Studies from the Harriman School at Stony Brook University. (*Id.* ¶ 10.)

McIntyre began his employment with LCSD on April 1, 1993. (*Id.* ¶ 15.) LCSD is a public school district, kindergarten through twelfth grade, made up of approximately 9,745 students. (*Id.* ¶ 11.) The Longwood Junior High School, grades seven and eight, has approximately 1,500 students. (*Id.*) McIntyre was hired as the Principal for Longwood Junior High School, a position he maintained for the past fourteen (14) years. (*Id.* ¶ 10.)

When McIntyre was hired by LCSD as Principal of the Junior High School, he took a $2,000 salary cut from his previous position as assistant principal at Bellport High School. (*Id.* ¶ 15.) LCSD hired him below the mid-point of the existing salary range. (*Id.*) The LCSD sent a letter to the President of the MIAA stating that, although that action was outside normal hiring procedures, McIntyre was within the appropriate salary range with his colleagues. (*Id.*) However, McIntyre admits that LCSD has always hired administrators at the lower range of the salary schedule. (*Id.* ¶ 16.)

McIntyre is the most senior principal in the entire LCSD and the only principal with a doctorate degree. (*Id.* ¶ 22.) McIntyre alleges that his salary has grown to the current level through subsequent negotiations over the past fourteen (14) years. (*Id.* ¶ 15.) He further alleges that any disparity that exists between his salary and that of the current members of the unit is the result of: (1) the district hiring new and younger administrators at lower salaries than the administrators who were his peers when hired, a majority of whom have now retired, (2) the new, young administrators having no prior experience or less than he, and (3) the retiring of any comparable members of the unit. (*Id.* ¶ 15.)

#### 2. MIAA & Brennan

Defendant MIAA is the collective bargaining unit for the thirty-four (34) members of the Administrators Association. (*Id.* ¶ 17.) The MIAA consists of 23 white females, 3 Black females, 6 white males, and 2 Black males. The titles of the members of the MIAA are directors, principals, and assistant principals. (*Id.* ¶ 17.) Defendant Brennan is the former Union President of MIAA until June 2006, when she retired from that position. McIntyre has been a due paying member of MIAA from the time he was hired in 1993. (*Id.* ¶¶ 13, 17.)

For a twelve year period, McIntyre was the only Black, male principal in LCSD. During the 2005-2006 school year, the district hired another Black male as an assistant principal at the Middle School. (*Id.* ¶ 18.)

Over the past 12 years, the LCSD negotiated several contracts with the MIAA. McIntyre alleges that in the past, the LCSD treated all MIAA unit members as a whole in awarding salary increases, benefits, and

compensation. (*Id.* ¶ 20.) Unit members were given a specific percentage increase, which was applied equally to all members. (*Id.*)

In granting salary increases on a member-by-member basis, the LCSD recently abandoned the past practice of granting salary increases equally among all MIAA members.[2] (*Id.* ¶ 33.) The complaint alleges that the increase was either determined based on the base salary of the individual member or on the mid-point of the range for the titled position. (*Id.*) All members received the same percentage base salary increase. (*Id.*) The 2006-2011 contract departed from that practice. (*Id.*)

### 3. The CBA

On April 4, 2006, the LCSD signed a collective bargaining agreement ("CBA") with the MIAA for the years 2006-2011. (*Id.* ¶ 23.) In the CBA, the LCSD gave 32 of the 34 members of MIAA a substantial base salary increase ranging from twenty-seven percent (27%) to thirty-seven percent (37%), while only granting McIntyre a seventeen and three-tenths percent (17.3%) base salary increase over the life of the contract. (*Id.*) Plaintiff was the only Black male granted that increase. (*Id.* ¶ 25.) All female principals, except one, are younger than McIntyre and have been in their respective positions for a shorter period of time than he. (*Id.* ¶ 27.)

McIntyre alleges that defendant Brennan was the only other administrator that received a comparable increase in salary to his over the course of the contract. (*Id.* ¶ 13.) McIntyre further alleges that Brennan signed the negotiated contract on behalf of MIAA. (*Id.* ¶ 14.) He claims that this negotiation was done with mixed motives to mask the discriminatory animus, as Brennan submitted retirement documents six months within the effect of the contract. (*Id.* ¶ 28.) McIntyre is the only unit member who is negatively impacted over the life of the contract. (*Id.*) No other building principal who is similarly situated to McIntyre received such a low percentage base salary increase. (*Id.* ¶ 32.)

### B. Procedural History

As a result of alleged differential treatment from LCSD, plaintiff filed a complaint with the United States Equal Employment Opportunity Commission (the "EEOC") in October of 2004. (*Id.* ¶ 18.) Although plaintiff received a "Right to Sue" letter, plaintiff did not pursue that right in federal court. (*Id.*)

Plaintiff filed another complaint with the EEOC on January 5, 2007. (*Id.* ¶ 7.) The EEOC issued plaintiff a "Right to Sue" letter on January, 22, 2007.[3] (*Id.* ¶ 20.) Plaintiff brought suit *in forma pauperis* in this Court on March 29, 2007. Defendants moved to dismiss pursuant to Rule 12(b)(6) on May 18, 2007. The motion is fully submitted and the

---

[2] This practice has been established in previously negotiated contracts from 1990-1993, 1994-1998, 1998-2002, and 2002-2006. (Id. ¶ 33.)

[3] The complaint alleges that the action was filed within ninety days of the receipt of plaintiff's notice of "right to sue." The complaint alleges that plaintiff received such notice on February 21, 2006. However, the complaint was not actually filed until March 29, 2007, which would be well over ninety days from the receipt of the notice. The Court believes the February 21, 2006 date was alleged in error, and assumes plaintiff meant February 21, 2007.

3

Court has carefully considered the submissions of the parties.[4]

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (May 21, 2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* Moreover, as the plaintiff is appearing *pro se*, the Court shall "'construe [his complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)).

## III. DISCUSSION

Defendants have moved to dismiss on a number of grounds. First, defendants contend that MIAA does not fall under the coverage of Title VII or the ADEA as an employer or labor organization and that there are also other pleading defects with these claims that warrant dismissal. Second, defendants contend that the plaintiff fails to state a claim for discrimination under both 42 U.S.C. §§ 1981 and 1983. Finally, defendants contend that the pendent state claims must also be dismissed because, among other things, (1) the breach of the duty of fair representation claim is time-barred, and (2) the NYSHRL claim applies to an employer and is inapplicable to MIAA. The Court will address each argument separately.

### A. Title VII and ADEA[5]

---

[4] The Court notes that, although plaintiff filed this lawsuit *pro se* and responded to the motions *pro se*, he is now represented by counsel.

[5] As a threshold matter, the Court grants defendant Brennan's motion to dismiss the Title VII and ADEA claims against her. Specifically, it is well-established that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995); *see also Copeland v. Rosen*, 38 F. Supp. 2d 298, 302 (S.D.N.Y. 1999) ("[I]ndividual employees may not be held personally liable under Title VII, even if they are supervisory personnel with the power to hire and fire other employees."). Although the Second Circuit has never decided this precise issue under the ADEA, it has previously made clear that it analyzes ADEA claims within the same framework as Title VII. *See, e.g., Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465 (2d Cir. 1997). Thus, given this general Second Circuit guidance and the similarities between the definition of "employer" under the ADEA and Title VII, this Court concludes that, as with Title VII, individual defendants with supervisory control over a plaintiff do not have personal liability under the ADEA. In reaching this decision, this Court joins numerous other courts in this Circuit who have reached a similar conclusion. *See, e.g., Davey v. Jones,* No. 06 Civ. 4206 (DC), 2007 WL 1378428, at *3 (S.D.N.Y. May 11, 2007); *Fox v. State Univ. of N.Y.,* 497 F. Supp. 2d 446, 449-50 (E.D.N.Y. 2007) (collecting cases). In this case, the plaintiff

MIAA argues that dismissal of the Title VII and ADEA claims is warranted because MIAA does not qualify as a "labor organization" as defined under those statutes. MIAA contends, in the alternative, that these claims must be dismissed because plaintiff cannot demonstrate an adverse employment action, nor can he demonstrate discriminatory animus. For the reasons set forth below, the Court disagrees and concludes that plaintiff's claim survives under a motion to dismiss standard.

1. Definition of "Labor Organization"[6]

Title VII makes it unlawful for an employer or labor organization "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §§ 2000e-2(a), (c). It is clear from plaintiff's complaint that plaintiff has been employed by LCSD as a principal for 14 years and, thus, is not claiming that he has an employer-employee relationship with MIAA. Instead, plaintiff is seeking to sue defendant MIAA as a "labor organization" under Title VII. Defendant MIAA contends that dismissal is appropriate because MIAA does not fall under the coverage of Title VII as a labor organization. For the reasons set forth below, the Court concludes that this issue cannot be resolved at the motion to dismiss stage given the allegations in plaintiff's complaint.

Title VII defines a labor organization, in relevant part, as "a labor organization engaged in an industry affecting commerce . . . which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours . . . ." 42 U.S.C. § 2000e(d). The key issue with respect to MIAA is whether it is "engaged in an industry affecting commerce." Section 42 U.S.C. § 2000e(e) provides that under Title VII a "labor organization" will be considered "engaged in an industry affecting commerce" based upon the following criteria:

> A labor organization shall be deemed to be engaged in an industry affecting commerce if (1) it maintains or operates a hiring hall or hiring office which procures employees for an employer or procures for employees opportunities to work for an employer, or (2) the number of its members (or, where it is a labor organization composed of other labor organizations or their representatives, if the aggregate number of the members of such other labor organization) is (A) twenty-five or more during the first year after March 24, 1972, or (B) fifteen or more thereafter, and such labor organization --
>
> (1) is the certified representative of employees under the provisions of the

---

asserts Title VII and ADEA claims against Brennan as an individual with supervisory control within the MIAA. As such, the defendants' motion to dismiss the Title VII and ADEA claims against Brennan is granted.

[6] The ADEA uses the same terminology as Title VII for labor organization. As such, for the same reasons discussed in footnote 5 with respect to the issue of individual liability and the definition of "employer," the Court also concludes that the "labor organization" issue under ADEA is the same as under Title VII. Thus, for the same reasons outlined *infra* with respect to Title VII, the Court also denies the motion to dismiss with respect to MIAA on the ADEA claim.

National Labor Relations Act, as amended [29 U.S.C. A. § 151 et seq.], and the Railway Labor Act, as amended [45 U.S.C.A. § 151 et seq.];

(2) although not certified, is a national or international labor organization or a local labor organization recognized or acting as the representative of employees of an employer or employers engaged in an industry affecting commerce; or

(3) has chartered a local labor organization or subsidiary body which is representing or actively seeking to represent employees of employers within the meaning of paragraph (1) or (2); or

(4) has been chartered by a labor organization representing or actively seeking to represent employees within the meaning of paragraph (1) or (2) as the local or subordinate body through which such employees may enjoy membership or become affiliated with such labor organization; or

(5) is a conference, general committee, joint or system board, or joint council subordinate to a national or international labor organization, which includes a labor organization engaged in an industry affecting commerce within the meaning of any of the preceding paragraphs of this subsection.

42 U.S.C. 2000e(e). "Industry affecting commerce" means "any activity, business, or industry in commerce in which a labor dispute would hinder or obstruct commerce or the free flow of commerce . . . ." 42 U.S.C. § 2000e(h). The term "commerce" means "trade, traffic, commerce, transportation, transmission, or communication among the several States; or between a State and any place outside thereof . . . ." 42 U.S.C. § 2000e(g).

Thus, one of the ways that a plaintiff can satisfy the burden of demonstrating the requisite nexus to interstate commerce is by proving under subparagraph (4) that "the local labor organization does not itself satisfy the requirement of representing employees of an employer engaged in an industry affecting commerce, yet that local has been chartered by either a national or international labor organization which does satisfy the requirement." *Rainey v. Town of Warren*, 80 F. Supp. 2d 5, 14 (D.R.I. 2000).

In the instant case, in support of its motion to dismiss, MIAA has submitted the affidavits of current MIAA President Kevin McCarthy, as well as former MIAA president Kathleen Brennan, to establish that MIAA is a local unincorporated association and certified representative of 34 public school administrators under the New York State Fair Employment Act, whose jurisdiction is limited to the confines of the school district, and holds no affiliations with any national or international union. Based upon these affidavits, MIAA argues that plaintiff will be unable to prove that MIAA has an affiliation with a national or international union.

However, it is axiomatic that, in connection with a motion to dismiss under Rule 12(b)(6), the Court may only consider the "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis*, 421 F.3d at 100; *accord Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). Thus, "'[w]hen matters outside the pleadings are presented in support of, or in opposition to a [Fed. R. Civ. P.] 12(b)(6)

motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under [Fed. R. Civ. P.] 56 and afford all parties the opportunity to present supporting material.'" *Mastykarz v. Niagara Mohawk Power Corp.*, No. 06-CV-0641E, 2007 U.S. Dist. LEXIS 23196, at *6-*7 (W.D.N.Y. Mar. 23, 2007) (quoting *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000)).

Although MIAA has moved in the alternative for summary judgment on this issue, the Court concludes that conversion of MIAA's motion to dismiss to consider these affidavits is unwarranted at this juncture. "Federal courts have 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings' offered in conjunction with a Rule 12(b)(6) motion, and thus complete discretion in determining whether to convert the motion to one for summary judgment; 'this discretion generally will be exercised on the basis of the district court's determination of whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action.'" *Carione v. United States*, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, Civil § 1366 (3d ed. 2004)); *see also Liberty Mut. Ins. Co. v. N. Picco & Sons Contracting Co.*, No. 05 Civ. 217, 2008 U.S. Dist. LEXIS 4915, at *10 (S.D.N.Y. Jan. 18, 2008) ("It is within the discretion of this Court to convert a motion filed under Rule 12(b)(6) into a motion seeking summary judgment. . . ."); *Malaney v. El Al Isr. Airlines*, No. 07 Civ. 8773, 2008 U.S. Dist. LEXIS 1709, at *10 (S.D.N.Y. Jan 4, 2008) ("A district court has discretion to convert a motion to dismiss into a motion for summary judgment. . . .").

Here, in response to defendants' motion, plaintiff argues that MIAA can satisfy the statutory definition of "labor organization" because it holds an affiliation with the Council of Administrators and Supervisors (CAS), which in turn holds an affiliation with the American Federation of Labor Congress of Industrial Organization (AFL-CIO). Although MIAA denies these facts and plaintiff has not provided the factual evidence to support his position, plaintiff is entitled to discovery on this issue before requiring him to oppose a summary judgment motion.[7] *See Lozano v. Peace*, No. 05-0174 (SJF) (ETB), 2005 U.S. Dist. LEXIS 40319, at *3 n.1 (E.D.N.Y. Sept. 14, 2005) ("declin[ing] to

---

[7] The Court also notes that, even if the Court were to convert the motion, it would then have to provide plaintiff with another opportunity to make additional submissions because plaintiff (who was *pro se* at the time he responded to the motion) was not served with the notice under Local Civil Rule 56.2, advising him that he is not entitled to simply rely on allegations in his complaint, but is required to submit evidence, including sworn affidavits, witness statements, and documents to respond to the motion for summary judgment, pursuant to Fed. R. Civ. P. 56(e). *See, e. g., Irby v. N.Y. City Transit Auth.*, 262 F.3d 412, 414 (2d Cir. 2001) ("[W]e remind the district courts of this circuit, as well as summary judgment movants, of the necessity that *pro se* litigants have actual notice, provided in an accessible manner, of the consequences of the *pro se* litigant's failure to comply with the requirements of Rule 56 . . . . [E]ither the district court or the moving party is to supply the *pro se* litigant with notice of the requirements of Rule 56. . . . In the absence of such notice or a clear understanding by the *pro se* litigant of the consequences of failing to comply with Rule 56, vacatur of the summary judgment is virtually automatic.")

7

convert the motion into one for summary judgment" where "District Court has broad discretion in determining whether to convert a motion to dismiss into one for summary judgment"); *Cassotto v. Potter*, No. 3-07-cv-266, 2007 U.S. Dist. LEXIS 53240, at *2-*3 (D. Conn. July 20, 2007) (refusing to consider documents defendant proffered on motion to dismiss and, therefore, refusing to convert motion to dismiss into motion for summary judgment); *Scope, Inc. v. Pataki*, 386 F. Supp. 2d 184, 190 (W.D.N.Y. 2005) ("The Court determines in its discretion, however, not to convert these motions on the pleadings to ones for summary judgment at this time."); *Staveley v. St. Charles Hosp.*, 173 F.R.D. 49, 51 (E.D.N.Y. 1997) ("While the defendant indicates in its reply papers that discovery in this case is complete, the Court in an exercise of its discretion, nevertheless declines to convert this motion to one for summary judgment."); *Patell Indus. Mach. Co., v. Toyoda Mach. U.S.A., Inc.*, No. 93-CV-1572, 1997 U.S. Dist. LEXIS 306, *5-*6 (N.D.N.Y. Jan. 9, 1997) ("The Court, however, declines to convert Defendant's motion to a motion for summary judgment, and therefore will not consider Plaintiff's affidavit in ruling upon the merits of Defendant's Rule 12(c) motion.").

In short, the Court concludes that MIAA's motion to dismiss the Title VII and ADEA claims on the ground that MIAA does not satisfy the criteria for a "labor organization" under those statutes must be denied.[8] *See Rodriguez v. Beechmont Bus Serv., Inc.*, 173 F. Supp. 2d 139 (S.D.N.Y. 2001) (denying motion to dismiss because Court could not conclude at that stage that plaintiff would be unable to establish employer status); *see also Dean v. Am. Fed'n of Gov't Employees Local 476*, 402 F. Supp. 2d 107, 112 (D.D.C. 2005) ("Plaintiff deserves an opportunity to establish whether 'the employees of the union local, defendant in this action, and the national, should be considered together or separately' and whether Defendant is a 'labor organization engaged in an industry affecting commerce.'") (citation omitted).

2. The "Adverse Employment Action" Requirement

Plaintiff claims that MIAA has been involved in the denial of certain salary increases to the plaintiff based on his race, sex, and age, in violation of Title VII and the ADEA. Any claim against MIAA under Title VII or the ADEA must arise from its duty of fair representation. *See, e.g., Nweke v. Prudential Ins. Co. of Am.*, 25 F. Supp. 2d 203, 220 (S.D.N.Y. 1998) ("It has been held that in order to establish a Title VII claim concerning representation by a union of its members' interests, 'it is axiomatic that . . . there must first be a finding that the [union] breached its duty of fair representation.'") (quoting *Martin v. Local 1513 & District 118 of the Int'l Ass'n of Machinists and Aerospace Workers*, 859 F.2d 581, 584 (8th Cir. 1988)). More specifically, in order to establish a claim under Title VII for a breach of its duty of fair

---

[8] Defendants cite to several cases in their reply papers, and the court is aware of others, in which a court found a teacher's union or association was not a covered entity under Title VII. *See, e.g., Fraser v. Pa. State Sys. of Higher Educ.*, No. CIV. A. 92-6210, 1994 WL 242527, at *10 (E.D. Pa. June 6, 1994); *EEOC v. Cal. Teachers' Ass'n*, 534 F. Supp. 209, 217 (1982); *see also Saini v. Bloomsburg Univ. Faculty*, 826 F. Supp. 882, 887 (M.D. Pa. 1993). However, these cases were decided at the summary judgment stage. Here, the Court is simply determining that plaintiff should be entitled to discovery on this issue before he must respond to a summary judgment motion.

8

representation due to discriminatory reasons, a plaintiff must show the following: (1) that the employer violated the collective bargaining agreement; (2) that the union allowed the violation to go unrepaired, thereby breaching its duty of fair representation; and (3) that the breach by the union was motivated by discriminatory animus. *See Bugg v. Int'l Union of Allied Indus. Workers, Local 507*, 674 F.2d 595, 598 n.5 (7th Cir. 1982); *accord Daniels v. Niagara Mohawk Power Corp.,* No. 04-CV-0734S, 2007 WL 925759, at *6 (W.D.N.Y. Mar. 26, 2007); *Schaefer v. Erie County Dep't of Soc. Servs. & CSEA Local 815,* 82 F. Supp. 2d 114, 118 (W.D.N.Y. Jan. 26, 2000); *Ross v. Commc'n Workers Am., Local 1110,* 91 Civ. 6367, 1995 U.S. Dist. LEXIS 7959, at *19-20 (S.D.N.Y. June 9, 1995), *aff'd*, 100 F.3d 944 (2d Cir. 1996); *see also Agosto v. Corr. Officers Benevolent Ass'n,* 107 F. Supp. 2d 294, 303-04 (S.D.N.Y. 2000) (collecting cases).

Defendant argues that the claim must be dismissed because, among other things, plaintiff cannot prove that he has suffered an adverse employment action or that he has been the subject of discriminatory animus by the union. However, in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), the Supreme Court rejected the concept that there is a heightened pleading standard in discrimination cases and, thus, held that the survival of a complaint in an employment discrimination case does not rest on whether it contains specific facts establishing a *prima facie* case under *McDonnell Douglas*. *Swierkiewicz*, 534 U.S. at 510 ("The *prima facie* case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."); *see also Williams v. N.Y. City Hous. Authority,* 458 F.3d 67, 71-72 (2d Cir. 2006) (applying *Swierkiewicz* holding to retaliation claims); *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006) (applying *Swierkiewicz* holding to discrimination claims under Title VII and ADEA claims); *Coffey v. Cushman & Wakefield*, No. 01 CIV. 9447 JGK, 2002 WL 1610913, at *6 (S.D.N.Y. July 22, 2002) (applying *Swierkiewicz* and rejecting motion to dismiss a constructive discharge claim under the ADEA).

The Supreme Court has recently reiterated that "courts should generally not depart from the usual practice under the Federal Rules [of Civil Procedure]," and explained that heightened pleading requirements can only be established through the legislative process. *Jones v. Bock*, – U.S. –, 127 S.Ct. 910, 918 (2007). No such heightened pleading requirement for discrimination claims exists in Title VII or the ADEA. Therefore, the controlling standard for survival of a motion to dismiss lies not in *McDonnell Douglas*, but in Rule 8(a) of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Swierkiewicz*, 534 U.S. at 513 (holding that complaints in discrimination cases "must satisfy only the simple requirements of Rule 8(a)").

The Second Circuit has emphasized that the Federal Rules "set forth a pleading standard under which a plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests." *Leibowitz,* 445 F.3d at 591. Such a pleading "will enable the adverse party to answer and prepare for trial, allow the application of *res judicata*, and identify the nature of the case so it may be assigned the proper form of trial." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (internal quotation omitted). A clear statement from the plaintiff alleging discrimination by the defendant is

9

sufficient to achieve these goals. *See Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961) (holding that a complaint stating "that defendants have in a willful and malicious manner discriminated against plaintiff" provided sufficient notice of the discrimination claim).

Plaintiff has made a sufficiently clear statement in the complaint to satisfy Rule 8(a). In particular, plaintiff has set forth a 56-page complaint with exhibits, detailing his claim that LCSD, working with the MIAA, has deprived him of salary increases over the years based on his race and sex. In support of this claim, plaintiff provides, among other things, detailed statistics regarding the disparity between his salary increases and those of administrators of a different race and/or sex. In short, plaintiff's allegations are sufficient to satisfy Rule 8 and survive a motion to dismiss. The Court cannot conclude that no "plausible" claim exists under Title VII.

MIAA's arguments regarding the facial defects to the complaint are unavailing. First, MIAA notes that the complaint acknowledges that plaintiff has received certain salary increases over the years. Thus, MIAA contends that plaintiff's claim that his failure to receive the same percentage salary increases as other administrators cannot constitute an adverse employment action under Title VII. (*See* Defendants' Memorandum of Law, at 10) ("'[A] 'bruised ego' is insufficient to constitute a tangible or material adverse employment action, which is a requirement under Title VII."). However, if plaintiff can demonstrate that he has been denied the same percentage of salary increases received by other administrators because of his race and/or gender, such denial of salary increases could constitute an "adverse employment action" under Title VII. *See, e.g., Taher v. Wichita State Univ.,* 526 F. Supp. 2d 1203, 1218 (D. Kan. Dec. 7, 2007) ("Defendant argues that a salary increase does not constitute adverse action and therefore plaintiff cannot establish a prima facie case. . . . The issue, however, is not whether plaintiff received *any* pay raise but whether he received a lesser raise than similarly situated employees of different races. . . . Defendant has not shown that plaintiff's claim is precluded by the mere fact that he received a pay raise."); *Somoza v. Univ. of Denver,* No. 05-cv-00355-PAC-BNB, 2006 WL 2535092, at *14 (D. Colo. Aug. 31, 2006) ("In the Tenth Circuit, a plaintiff may be able to show an adverse employment action for purposes of a prima facie case under § 1981 if he or she receives a smaller salary increase than other similarly-situated employees outside the protected class.") (citing *Amro v. Boeing Co.,* 232 F.3d 790, 798 (10th Cir. 2000)); *Mandel v. Champion Int'l Corp.,* 361 F. Supp. 2d 320, 326 (S.D.N.Y. March 21, 2005) ("The court agrees that a denial of a pay increase, if proven, would constitute an adverse employment action.") (citing *Davis v. State Univ. of N.Y.,* 802 F.2d 638, 642 (2d Cir. 1986)). Thus, dismissal on this ground is unwarranted.

Second, MIAA claims that it is doubtful, based upon these allegations, that plaintiff would satisfy the elements of a Title VII claim. For example, MIAA notes that, according to the statistics in the complaint, plaintiff is complaining that certain Black and female administrators also received larger salary increases than he did and, thus, plaintiff will be unable to demonstrate that any disparity is based on race or sex. (*See* Defendant's Memorandum of Law, at 8-9.) That "'it may appear on the face of the pleadings that a recovery is very remote and unlikely . . . is not the test.'" *Swierkiewicz*, 534 U.S. at 515 (internal quotation omitted) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) ("When a federal court reviews

the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.")). Here, plaintiff's allegations set forth a plausible claim and, thus, survive a motion to dismiss.

MIAA has not made any claim that plaintiff failed to give sufficient notice of his claim. Instead, defendant argues the merits of plaintiff's claim. The fact that defendant was able to argue the merits is evidence that defendant has had sufficient notice, and that plaintiff's complaint achieves the ends the Second Circuit described in *Simmons*. *Simmons*, 49 F.3d at 87 (holding that a movant's failure to argue non-compliance with Rule 8 was evidence that the plaintiff's complaint contained sufficient notice); *see also Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) (stating that the movant's failure to argue a lack of notice was evidence that sufficient notice was given through the pleadings). Thus, although MIAA may believe that there is a lack of evidence to support plaintiff's claim, "[t]his simplified notice pleading standard [under Rule 8(a)] relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*, 534 U.S. at 512. Thus, MIAA will have a full opportunity to raise these arguments should it move for summary judgment at the conclusion of discovery.[9]

Accordingly, defendant's motion to dismiss plaintiff's Title VII claims as failing to plead sufficient facts to survive such a motion must be denied.[10]

B. Section 1981 Claim

Plaintiff asserts a cause of action under 42 U.S.C. § 1981. Section 1981 prohibits intentional race-based discrimination in the workplace. *See Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998); *see also Turner v. Nat'l R.R. Passenger Corp.*, 181 F. Supp. 2d 122, 126 (N.D.N.Y. 2002).

Section 1981 claims are analyzed under the same standards as Title VII claims. *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000). As set forth *supra*, the plaintiff has adequately pled a Title VII discrimination claim against MIAA. Therefore, the plaintiff also sets forth a cause of action against MIAA under Section 1981.

Moreover, unlike VII, Section 1981 provides for individual liability on the part of non-employers. *See id.* (holding that individuals may be held liable under Section

---

[9] To the extent that MIAA again urges the Court to convert its motion to dismiss into a motion for summary judgment (Defendants' Memorandum of Law, at 8) so that it can examine the lack of evidence supporting plaintiff's claims in connection with these issues, the Court declines to do so at this time for the same reasons discussed *supra* with

respect to the "labor organization" requirement. Specifically, plaintiff should be provided with an opportunity for discovery before having to defend against a summary judgment motion which claims that he has failed to set forth sufficient evidence of an adverse employment action or discriminatory intent to survive summary judgment.

[10] Defendants also argue that, to the extent that plaintiff attempts to assert a separate "mixed motive" claim against defendant Brennan (Compl. ¶¶ 69-78), such claim must be dismissed. The Court agrees. "Mixed motive" relates to the analysis of Title VII claims and does not provide an independent basis for a cause of action and, thus, any such claim must be dismissed. Similarly, as discussed *supra*, defendant Brennan has no individual liability under Title VII.

1981); *see also Tekula v. Bayport-Blue Point Sch. Dist.*, 295 F. Supp. 2d 224, 229 (E.D.N.Y. 2003). Plaintiff alleges that Brennan signed the negotiated contract on behalf of MIAA (Compl. ¶ 14) and, thus, participated in the alleged discriminatory conduct by MIAA. Thus, Brennan's role with respect to the contract, when analyzed in conjunction with the other allegations discussed fully in connection with the Title VII claim against MIAA, is sufficient to satisfy the motion to dismiss standard.

Accordingly, the motion to dismiss the section 1981 claims against MIAA and Brennan is denied.

### C. Section 1983 Claim

The plaintiff also asserts a cause of action under 42 U.S.C. § 1983 based upon the alleged discriminatory conduct by defendants MIAA and Brennan, acting in concert with the LCSD. As set forth below, although defendants contend that plaintiff's allegations of a Section 1983 conspiracy are too conclusory to survive a motion to dismiss, the Court disagrees.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n. 3 (1979). Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

Under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges or immunities secured by the Constitution and federal law, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. Section 1983 does not itself provide substantive rights, but in fact offers "a method for vindicating federal rights elsewhere conferred." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d. Cir. 2004) (quoting *Baker*, 443 U.S. at 144 n.3); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) ("Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere.") (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). "'A Title VII plaintiff is not precluded from bringing a concurrent § 1983 cause of action,' such as a claim for denial of equal protection, 'so long as the § 1983 claim is based on a distinct violation of a constitutional right.'" *Patterson*, 375 F.3d at 225 (quoting *Gierlinger v. N.Y. State Police*, 15 F.3d 32, 34 (2d Cir. 1994) and citing *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993)).

Plaintiff asserts violations of his rights under the Equal Protection Clause of the Fourteenth Amendment, which provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state a claim of discrimination under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his membership in a protected class. *Linder v. City of New York*, 263 F. Supp. 2d 585, 592

(E.D.N.Y. 2003) (citing *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)).

"In order to survive a motion to dismiss on a § 1983 conspiracy claim, the plaintiff must allege (1) an agreement between two or more state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal." *Carmody v. City of New York*, No. 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 25308, at *16 (S.D.N.Y. May 11, 2006) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-35 (2d Cir. 2002)). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *See Ciambriello*, 292 F.3d at 325 (dismissing conspiracy allegations where they were found "strictly conclusory"); *see also Robbins v. Cloutier*, 121 Fed. Appx. 423, 425 (2d Cir. 2005) (dismissing a § 1983 conspiracy claim as insufficient where plaintiff merely alleged that defendants "acted in a concerted effort" to agree not to hire plaintiff and to inform others not to hire plaintiff). "A plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when he pleads conspiracy, but the pleadings must present facts tending to show agreement and concerted action." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) (report and recommendation) (accepted by, in part, rejected by, in part, *Fisk v. Letterman*, 401 F. Supp. 2d 362 (S.D.N.Y. 2005) (citations and quotations omitted)).

Defendants assert that the "[c]omplaint makes only general and conclusory statements insinuating a conspiracy, but fails to allege any facts to support the existence of an agreement between LCSD and MIAA . . . ." (Defendant's Memorandum of Law, at 16.) However, the Court concludes that plaintiff's allegations of conspiracy are sufficient to survive a motion to dismiss. As discussed *supra*, in his 56-page complaint and accompanying exhibits, plaintiff explains in exhaustive detail how he believes the LCSD and MIAA conspired together to deprive him of certain salary increases based upon race, gender, and age. Given these detailed allegations in the complaint, there is no basis to dismiss the Section 1983 conspiracy claim as conclusory. *See, e.g., O'Connor v. City of St. Paul,* No. Civ. 01-846MJDSRN, 2001 WL 1677605, at *5 (D. Minn. Dec. 21, 2001) ("In the Amended Complaint, Plaintiffs do allege that [the Secretary of Local 21] took actions to deprive Plaintiffs the right to keep their promotional benefits as Secretary of Local 21, and that the union worked in concert with the City of St. Paul to ensure the guarantee of the promotional rights was distinguished. Accordingly, for purposes of [the Secretary of Local 21's] motion to dismiss, the Court finds that Plaintiffs have stated a claim against [the Secretary of Local 21] under Section[s] 1983 and 1985."). Accordingly, defendants' motion to dismiss the Section 1983 claim is denied.

### D. State Claims

Plaintiff also asserts state law claims based on an alleged violation of defendants' duty of fair representation and on an alleged violation of New York Executive Law § 296. Defendants move to dismiss both claims. As set forth below, the motion as to the state claims is granted.

#### 1. Duty of Fair Representation

Under New York state law, a claim against a union for violating the duty of fair representation is subject to a four-month statute of limitations. N.Y.C.P.L.R. § 217(2)(a); *see, e.g., Williams v. N.Y. City Hous. Auth., Teamsters Local 237,* 458 F.3d 67 (2d Cir. 2006); *Roman v. City Employees Union Local 237*, 300 A.D.2d 142, 142 (N.Y.

13

App. Div. 2002); *Blumberg v. Patchogue-Medford Union Free Sch. Dist.*, 18 A.D. 3d 486, 488 (N.Y. App. Div. 2005). Section 217(2)(1) states, in relevant part:

> Any action or proceeding against an employee organization . . . which complains that such employee organization has breached its duty of fair representation . . . shall be commenced within four months of the date the employee or former employee knew or should have known that the breach has occurred, or within four months of the date the employee or former employee suffers actual harm, whichever is later.

N.Y.C.P.L.R. 217(2)(a).

In *Williams*, plaintiff filed her complaint in federal court on October 2, 2003, alleging federal Title VII claims as well as state claims for breach of duty of fair representation. The District Court dismissed her state claims as time barred. In affirming the district court, the Second Circuit noted that, on March 3, 2003, plaintiff wrote a letter to the Union voicing her dissatisfaction with the union's actions. Thus, the Court found that the letter indicated the plaintiff's awareness of the alleged breach more than four months prior to the filing of the complaint. *See Williams*, 458 F.3d at 70.

Similarly, in the instant case, McIntyre filed his complaint in this Court on March 29, 2007. The alleged breach that McIntyre discusses throughout his complaint was clearly in reference to the negotiations and execution of the CBA with respect to salary increases. (*See* Compl. ¶¶ 44, 86, 88-89.) Therefore, McIntyre was allegedly harmed the date the CBA was ratified by the LCSD, which was April 4, 2006. McIntyre's action against MIAA and Brennan was commenced more than four months after the date of such alleged harm. Therefore, the Court concludes that plaintiff's breach of duty of fair representation claim is time-barred.

2. NYSHRL

Plaintiff alleges that MIAA violated Section 296(1)(a) of the NYSHRL. Section 296(a)(1) makes it an unlawful discriminatory practice for an "employer" to "refuse to hire or employ . . . or discriminate against an individual in compensation or in terms, conditions or privileges of employment." NY Exec. Law § 296(1)(a).

As a threshold matter, this claim must be dismissed because there is no allegation that MIAA was plaintiff's employer. Although the NYSHRL does not define "employer," there are four factors that a court must analyze under New York law in making that determination: "1) whether the proposed employer had the power of the selection and engagement of the employee; 2) whether the proposed employer made the payment of salary or wages to the employee; 3) whether the proposed employer had the power of dismissal over the employee; and 4) whether the proposed employer had the power to control the employee's conduct." *Goyette v. DCA Adver. Inc.,* 830 F. Supp. 737, 747 (S.D.N.Y. 1993) (citing *State Div. of Human Rights ex rel. Emrich v. GTE Corp.,* 109 A.D.2d 1082, 1083 (N.Y. App. Div. 1985)). It is abundantly clear from plaintiff's detailed complaint and exhibits that none of these elements existed with respect to his relationship with MIAA. Therefore, dismissal of the claim is warranted on this ground on the Section 296(a)(1) claim because plaintiff does not have a "plausible" claim.

In addition, the claim is also fatally flawed because, as the Second Circuit has noted, it is

well-established that "[New York] state law makes an unincorporated association liable for the torts of its members only where the unlawful acts are authorized or ratified by each member of the association." *Modeste v. Local 1199, Drug, Hosp. and Health Care Employees Union, RWDSU, AFL-CIO,* 38 F.3d 626, 627 (2d Cir. 1994) (citing *Martin* v. *Curran*, 303 N.Y. 276, 279-81 (N.Y. 1951)). Thus, with respect to an unincorporated association such as a labor union, a cause of action exists under state law only when it was authorized or ratified by each member. *See, e.g., Girolamo v. Teamsters Local 72,* No. 97 Civ. 9412, 81676, 1998 WL 889039, at *9 (S.D.N.Y. Dec. 21, 1998)( "A cause of action under state law against a labor union may be maintained only if it is provable against each member."); *accord R.M. Perlman, Inc. v. N.Y. Coat, Suit, Dresses, Rainwear & Allied Workers' Union Local 89-22-1, I.L.G.W.U.,* 789 F. Supp. 127, 131-32 (S.D.N.Y. 1992); *Walsh v. Torres-Lynch,* 697 N.Y.S.2d 434, 434 (N.Y. App. Div. 1999). Here, plaintiff does not claim that there was ratification of the alleged discriminatory conduct by each member of the MIAA. Thus, this defect provides an alternative ground for dismissal.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED with regard to plaintiff's Title VII and ADEA claims against Kathleen Brennan, but denied as to MIAA. Defendants' Rule 12(b)(6) motion is DENIED with respect to the Section 1981 and 1983 claims. Defendants' Rule 12(b)(6) motion is GRANTED with regard to the state law claims for breach of the duty of representation and for violation of N.Y. Executive Law Section 296(1)(a).

The parties shall continue with discovery under the direction of Magistrate Judge Boyle.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 27, 2008
Central Islip, NY

\* \* \*

Plaintiff Dr. Levi McIntyre appears *pro se* on this motion. Plaintiff is now represented by Steven A. Morelli, Esq., of Leeds, Morelli & Brown, P.C., 1 Old Country Road, Suite 347, Carle Place, NY 11514. The attorney for defendants MIAA and Kathleen Brennan is Bradford A. Stuhler, Esq., One Huntington Quadrangle, Suite 3NO5A, Melville, New York 11747.